AARON D. LANCASTER, ESQ.
Nevada Bar No. 10115
TROUTMAN PEPPER HAMILTON SANDERS LLP
8985 S. Eastern Ave., Ste. 200, Las Vegas, NV 89123 (*Nevada Office*)
600 Peachtree St. NE #3000, Atlanta, GA 30308 (*Corporate Office*)
Telephone: (470) 832-5586
Email:  aaron.lancaster@troutman.com
*Attorneys for Defendant Nationstar Mortgage, LLC d/b/a Mr. Cooper*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SFR INVESTMENTS POOL 1, LLC,<br><br>                    Plaintiff,<br><br>vs.<br><br>NATIONSTAR MORTGAGE, LLC d/b/a MR. COOPER; DOES I through X; and ROE BUSINESS ENTITIES I through X, inclusive,<br><br>                    Defendants. | Case No.: 2:22-cv-00373<br><br><br>**NATIONSTAR MORTGAGE LLC, DBA MR. COOPER'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** |

     Defendant Nationstar Mortgage LLC, dba Mr. Cooper (**Nationstar**) hereby moves to dismiss the claims asserted in the complaint filed by Plaintiff SFR Investments Pool 1, LLC (**SFR**). This motion is based on the below memorandum of points and authorities, the pleadings on record, the exhibits and declarations attached to this motion, and any oral argument presented at a hearing on the motion.

## <u>INTRODUCTION</u>

     SFR filed this lawsuit primarily to prevent Nationstar from foreclosing on a piece of residential property that is subject to Fannie Mae's deed of trust, for which Nationstar serves as beneficiary of record. SFR bases its claims for relief on a number of theories related to the enforceability of the deed of trust, but each theory is fatally flawed and should be dismissed with prejudice.

     SFR's central theory is that the debt underlying the deed of trust was accelerated by some unknown and unrecorded correspondence in 2009, and the deed of trust is, therefore, presumed

124746647

satisfied under Nevada's ancient lien statute found in NRS 106.240. SFR is mistaken.   The recordation of the First Rescission stopped any alleged acceleration and reset the ten-year clock. Further, even if the clock had been triggered, the prior quiet-title litigation to determine the deed of trust's validity paused that clock.   In any event, the NRS 106.240 clock was never triggered, as neither the notice of default nor any correspondence leading up to it accelerated the debt. Moreover, under the plain terms of the deed of trust and the requirements of NRS 107.080, Nationstar legally could not have accelerated the debt until they recorded a notice of default. Since the First Notice of Default and Second Notice of Default were rescinded, the underlying debt was not accelerated until 2021, when the Third Notice of Default was recorded; NRS 106.240 is thus inapplicable and does not prevent Nationstar from foreclosing on the deed of trust. Thus, SFR's claims based on NRS 106.240 fail as a matter of law.

SFR also brings claims based on a theory that Nationstar breached NRS 107.260 by failing to provide a copy of the promissory note secured by the subject deed of trust upon request. However, the Nevada legislature intentionally decided not to create a private cause of action for breaches of NRS 107.260 by the plain terms of NRS 107.300. Therefore, SFR cannot bring a claim for breach of NRS 107.260.

Finally, SFR brings claims alleging that Nationstar cannot enforce the deed of trust through the power of sale because the note and deed of trust were split on origination and never reunited. However, SFR already raised this issue in the earlier quiet-title action; SFR's theory did not succeed there, and it cannot succeed here. In any event, SFR misunderstands Nevada law:  the Nevada Supreme Court has confirmed that a note owner's contractually authorized servicer that serves as beneficiary of a deed of trust may foreclose on that deed of trust.

Each of SFR's claims is premised on one or more of the above theories. Since each theory is fatally flawed, the Court should dismiss SFR's complaint in its entirety and with prejudice.

\ \ \

\ \ \

\ \ \

124746647

## FACTS

**A.     Fannie Mae Owns a Deed of Trust Encumbering Property Owned by SFR and Nationstar Serves as Beneficiary of Record of that Deed of Trust.**

Congress chartered the Federal National Mortgage Association (**Fannie Mae**) to facilitate the nationwide secondary mortgage market, and thereby to enhance the equitable distribution of mortgage credit throughout the nation. *See City of Spokane v. Fannie Mae*, 775 F.3d 1113, 1114 (9th Cir. 2014). Fannie Mae and the Federal Home Loan Mortgage Corporation (Freddie Mac, and together with Fannie Mae, the **Enterprises**) together own millions of mortgages nationwide, including hundreds of thousands in Nevada. In 2012, "the value of the combined debt and mortgage-related assets of [the Enterprises] along with the Federal Home Loan Banks … exceed[ed] $5.9 trillion" nationwide, making them "the dominant force in the market." *Town of Babylon v. FHFA*, 699 F.3d 221, 225 (2d Cir. 2012).  Fannie Mae does not directly manage individual mortgage relationships, such as day-to-day borrower interactions. Instead, Fannie Mae contracts with servicers to act on its behalf; in that role, servicers often appear as record beneficiaries of Fannie Mae's deeds of trust. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011) (describing servicers' role).

In this matter, Fannie Mae contracted Nationstar to act on its behalf regarding the subject deed of trust and Nationstar appears as record beneficiary of Fannie Mae's deed of trust.  The subject deed of trust is recorded against the property located at 1738 Ashburn Drive, North Las Vegas, NV 89032 (the **Property**) to secure the repayment of a loan of $249,300.00 to David and Janet Anderson (the **Borrowers**), which was recorded on August 3, 2004 (the **Deed of Trust**).[1] Pursuant to the terms of the Deed of Trust, the Borrowers promised to pay back the debt in regular

---

[1] *See*, Exhibits 1, 2 and 15 for copies of the recorded Deed of Trust and the assignment of the Deed of Trust showing that the Deed of Trust was assigned to Nationstar. Exhibits 1-11 and 14-15 of this Motion are all copies of documents pulled from the Clark County Records on the Property. It is proper for the Court to take judicial notice of publicly recorded documents. *See*, *Niles v. Natl. Default Servicing Corp,*, 367 P.3d 804 (Nev. 2010). Nationstar requests the Court to take judicial notice of Exhibits 1-11 and 14-15.

124746647

periodic payments by no later than August 1, 2034.[2] Nationstar was assigned the Deed of Trust pursuant to a Corporate Assignment of Deed of Trust recorded on April 28, 2014.[3]

On January 17, 2013, Absolute Collection Services (**ACS**) recorded a foreclosure deed on the Property stating that it foreclosed on the Property pursuant to NRS 116.3116 *et. seq.* (the statute governing HOA foreclosure sales) and that SFR purchased the Property for $12,100.[4]

In 2015, FHFA, Freddie Mac, and Fannie Mae filed a complaint for quiet title against SFR in U.S. District Court for the District of Nevada claiming that multiple deeds of trust, including the subject Deed of Trust, survived multiple HOA foreclosure sales (**Quiet Title Action**). On January 28, 2019, the district court issued an order granting FHFA, Freddie Mac, and Fannie Mae's motion for summary judgment and finding that the Deed of Trust survived the HOA foreclosure sale under the Federal Foreclosure Bar.[5] SFR appealed the District Court's order. On June 25, 2020, the United States Court of Appeals for the Ninth Circuit entered a Memorandum affirming the District Court's order finding that the Deed of Trust survived the HOA foreclosure sale under the Federal Foreclosure Bar.[6]

The Deed of Trust contains a detailed provision allowing its beneficiary to accelerate the underlying debt if the Borrowers default on repayment of the loan. In order to accelerate, however, the Deed of Trust requires the beneficiary to engage in a multi-step process culminating in the recordation of a notice of default and election to sell. Specifically, in order to accelerate, paragraph 22 of the Deed of Trust requires the beneficiary to first send notice to the Borrowers after breach of the Deed of Trust specifying:

(a) the default;

(b) the action required to cure the default;

(c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and

---

[2] Ex. 1, p. 2
[3] *See*, Ex. 2.
[4] *See,* Exhibit 3.
[5] *See*, Exhibit 4.
[6] *See*, Exhibit 5, United States Court of Appeals for the Ninth Circuit Memorandum

124746647

(d) that failure to cure the default on or before the date specified in the notice may

result in acceleration of the sums secured by this Security Instrument and sale

of the Property.[7]

Once at least 30 days pass after the Borrowers are given notice and they do not cure the default, the beneficiary "at its option . . . may invoke the power of sale, including the right to accelerate full payment of the [promissory note]."[8] Crucially, **once the beneficiary decides to invoke the acceleration, the Deed of Trust requires the beneficiary to *record* a notice of default and election to sell notifying the Borrower and other parties of the invocation of the power of sale, including the right to accelerate.[9]**

On August 13, 2009, a Notice of Default/Election to Sell Under Deed of Trust was recorded (**First Notice of Default**).[10]  That Notice of Default was rescinded on January 10, 2011, when Recontrust Company, N.A. recorded a notice of rescission of notice of default (**First Rescission**).[11] The Rescission stated, in pertinent part:

> does hereby rescind, cancel and withdraw the Notice of Default and Election to Sell
> hereinafter described, provided, however, that this rescission shall not be construed
> as waiving, curing, extending to, or affecting any default, either past, present or
> future, under such Deed of Trust, or as impairing any right or remedy thereunder,
> and it is and shall be deemed to be, only an election without prejudice not to cause
> a sale to be made pursuant to such Notice of Default and Election to Sell, and it
> shall not in any way alter or change any of the rights remedies or privileges secured
> to Beneficiary and/or Trustee under such Deed of Trust, nor modify, nor alter in
> any respect any of the terms, covenants, conditions or obligations therein contained.

On June 30, 2014, a Notice of Default was recorded (**Second Notice of Default**).[12]  That Notice of Default was rescinded on October 22, 2021, when Quality Loan Service Corporation recorded a notice of rescission of notice of default (**Second Rescission**).[13]

---

[7] Ex. 1, p. 12, ¶ 22
[8] *Id.*
[9] Ex. 1, pp. 12, 13, ¶ 22.
[10] *See*, Exhibit 6.
[11] *See*, Exhibit 7.
[12] *See*, Exhibit 8.
[13] *See*, Exhibit 9.

5

124746647

On October 22, 2021, Nationstar, acting on behalf of Fannie Mae, recorded a Notice of Default and Election to Sell (**Third Notice of Default**).[14]  On January 26, 2022, Nationstar, acting on behalf of Fannie Mae, recorded a Notice of Sale (**Notice of Sale**).[15]

**B.      Nationstar Provided the Information Requested by SFR.**

After Defendants caused the Third Notice of Default to be recorded, SFR sent a letter to Nationstar on November 1, 2021, requesting certain information regarding the debt from Nationstar.[16] On November 17, 2021, Nationstar responded with a letter and an attached payoff statement outlining all amounts SFR would need to pay to avoid foreclosure.[17]  SFR did not respond to the November 17, 2021 letter from Nationstar.

**ARGUMENT**

**I.      Standard of Review**

In reviewing a motion to dismiss for failure to state a claim under FRCP 12(b)(6), the Court should dismiss a Complaint if it fails to state a claim upon which relief may be granted. To survive a motion to dismiss, the right to relief must contain factual allegations that are "enough to raise a right to relief above the speculative level." *Bell A. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The Court should evaluate the facts alleged to determine if they set forth a "plausible" not just a possible claim for relief. *Id.* at 546 ("Asking for plausible grounds . . . calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claims.).

In evaluating a motion to dismiss, the Court is not limited to only considering the allegations in the complaint but may consider other sources typically relied upon in considering such motions. Those sources include any documents incorporated into the complaint and relied upon in the complaint even if those documents are not attached to the complaint. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994). The Court may also take judicial notice of and consider any

---

[14] *See,* Exhibit 10.
[15] *See,* Exhibit 11.
[16] *See*, Exhibit 12.
[17] *See*, Exhibit 13.

124746647

publicly recorded documents. *United States v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008).

In this case, Nationstar relies upon the allegations of the Complaint as well as publicly recorded documents produced as Exhibits 1 through 8, almost all of which are explicitly relied upon in the Complaint. The Court may, therefore, consider all attached evidence in ruling on the Motion to Dismiss.

## II.   This Court Should Dismiss SFR's Claims Arising Under 106.240 Because the Statute Is Inapplicable.

### A.   The Recorded Rescission Renders NRS 106.240 Inoperative.

Plaintiff contends that the First Notice of Default, or correspondence preceding it, triggered the NRS 106.240 ten-year clock.  That is not correct, as described below.  But even if the clock had been triggered, the recordation of the First Rescission on January 10, 2011, stopped and reset the clock, negating any application of the statute to extinguish the Deed of Trust.

As the Nevada Supreme Court has explained, a rescission notice "effectively cancel[s] the acceleration" and resets NRS 106.240's ten-year clock.  *Glass v. Select Portfolio Servicing, Inc.*, No. 78325, 2020 WL 3604042, at *1 (Nev. July 1, 2020) (unpublished disposition).  *Glass* held that, under Nevada law, a recorded rescission places the lender and borrower in the same position as if the notice of default had never been recorded.  *See id.*; *see also Holt v. Reg'l Tr. Servs. Corp.*, 266 P.3d 601, 606 (Nev. 2011) (holding that "[a] notice of rescission renders moot disputes concerning the notice of default or its timing," and thus "resets the right-to-cure and other time periods provided by law for the debtor's protection"); NRS 107.550(3) (Upon the recording of a rescission of a notice of default, the "beneficiary of the deed of trust is thereupon restored to its former position and has the same rights as though … a notice of default and election to sell had not been recorded.").  The Nevada Supreme Court has repeatedly confirmed its decision in *Glass*. *Saticoy Bay LLC Series10717 Refectory v. Bank of Am., N.A.*, No. 82153, 2021 WL 5276630, at *1 (Nev. Nov. 10, 2021) (unpublished disposition); *Saticoy Bay LLC, Series 2920 Bayliner Ave. v. US Bank Nat'l Ass'n*, No. 82323, 2021 WL 5276381, at *1 (Nev. Nov. 10, 2021) (unpublished

disposition); *SFR Invs. Pool 1 v. U.S. Bank, N.A.*, No. 81293, 2021 WL 4238769, at *1 (Nev. Sept. 16, 2021) (unpublished disposition).

The Ninth Circuit has repeatedly confirmed this same principle of Nevada law. *Bank of Am., NA v. SFR Invs. Pool 1, LLC* (**BANA v. SFR**), 849 F. App'x 211 (9th Cir. 2021) (unpublished disposition); *TRP Fund VIII, LLC v. NewRez LLC*, No. 20-17129, 2021 WL 5823701 (9th Cir. Dec. 8, 2021); *Bank of Am., NA v. Summit Real Estate Group*, No. 20-16624, 2021 WL 5507377 (9th Cir. Nov. 24, 2021) (unpublished disposition). For instance, in *BANA v. SFR*, Fannie Mae challenged a district court's ruling that NRS 106.240 extinguished its lien notwithstanding a recorded rescission of the notice of default. Fannie Mae's servicer had recorded a notice of default and election to sell under the deed of trust, which had the effect of declaring all sums secured by the deed of trust immediately due and payable and causing the property to be sold to satisfy the debt. Two years later, the servicer issued a rescission notice stating that the servicer rescinded, cancelled, and withdrew the notice of default. The Ninth Circuit reversed the district court and held that, under Nevada law, the "rescission notice decelerated the demand for full payment [and] the notice rendered NRS 106.240 inapplicable." *BANA v. SFR*, 849 F. App'x at 212–13.[18]

Those holdings apply with equal force here. Borrowers' failure to make their mortgage payments led the servicer to record the First Notice of Default. The First Rescission stated that "RECONTRUST COMPANY, N.A., acting as an agent for the Beneficiary does hereby rescind, cancel and withdraw the Notice of Default and Election to Sell …."[19] Thus, the First Rescission had the effect of "cancel[ling] the demand for full payment of the note," rendering NRS 106.240 inapplicable. *BANA v. SFR*, 849 F. App'x at 212. As with the rescission in *Glass*, the First Recission here states that it is "only an election, without prejudice not to cause a sale to be made"

---

[18] Numerous district court decisions are to the same effect. *See, e.g.*, *Closson v. Bank of New York Mellon*, No. 2:20-cv-02229-APG-DJA, 2021 WL 3723154, at *2 (D. Nev. Aug. 20, 2021) ("a rescission of the notice of default was recorded. The rescission decelerated the same debt that was the subject of both the lender communications and the recorded notice of default. Consequently, the debt was no longer 'wholly due' under [NRS] 106.240, so the ten-year period to extinguish the lien has not run.").

[19] *See*, Exhibit 7.

124746647

but as *Glass* confirms, the First Rescission stops and resets the NRS 106.240 clock nevertheless. Ex. 6; *see Glass*, 2020 WL 3604042, at *1.

## B.   The Prior Quiet-Title Litigation Negates Plaintiff's Claim.

The First Rescission is not the only reason Plaintiff's claim fails.  Even if the NRS 106.240 clock had been triggered and not reset, the long-running federal-court quiet-title litigation to determine the Deed of Trust's validity paused it.

### 1.   Plaintiff Seeks an Absurd Result.

Tolling the ten-year period during the pendency of the federal-court litigation would comport with NRS 106.240's purpose:  to clear abandoned and forgotten liens from the record, thereby making title marketable without the need for quiet-title litigation.  As one federal court explained, ancient-lien statutes "have the obvious purpose of clearing titles of old and obsolete mortgages."  *LBM Fin. LLC v. Shamus Holdings, Inc.*, No. CIV. 09-11668-FDS, 2010 WL 4181137, at *4 (D. Mass. Sept. 28, 2010) (cleaned up).  It would make no sense to apply NRS 106.240 here, as the lien was obviously not abandoned or forgotten.

Terminating a lien under NRS 106.240 where that lien's validity was recently litigated between the lienholder and the titleholder's predecessor in interest for over four years of the ten-year period would violate the canon against interpreting statutes to require absurd results.  No one could reasonably believe the lien had been simply left to lie fallow, and invalidating it as "old and obsolete" or abandoned and forgotten would make a mockery of judgment confirming its validity.  As the U.S. Supreme Court has explained, "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."  *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982).[20]  Under the circumstances, Plaintiff cannot plausibly claim to believe that Nationstar abandoned the lien or lacks the intent to enforce it.  Nor could anyone else checking the land records reasonably infer that Nationstar did

---

[20] The Nevada Supreme Court concurs: "When interpreting a statute, this court resolves any doubt as to legislative intent in favor of what is reasonable, and against what is unreasonable. … A statute should be construed in light of the policy and the spirit of the law, and the interpretation should avoid absurd results."  *Hunt v. Warden*, 903 P.2d 826, 827 (Nev. 1995).

124746647

not intend to protect and enforce the lien.  Accordingly, this Court should hold that NRS 106.240 did not extinguish the Deed of Trust because the statutory clock was tolled during the pendency of the litigation over the Deed of Trust's validity.

### 2. The Statute That Includes NRS 106.240 Requires Tolling upon Notice of Pending Litigation.

The statute that includes NRS 106.240 expressly addresses notices of pending litigation, and its text and structure confirm NRS 106.240's inapplicability.  The legislation providing for NRS 106.240 was captioned "An Act to quiet title to real estate by defining when the lien of an attachment and mortgage *and the notice of the pendency of an action* expires."  *See* Stat. of Nev. (1917) at 41 (emphasis added).[21]  The section that directly follows NRS 106.240 states that "Notice of the pendency of any action"—including publicly recorded lis pendens—"shall not constitute notice or be of any force or effect *after the expiration of ten years from the time of the filing of such notice*."  *See* Stat. of Nev. (1917) at 41 (emphasis added).  That provision remains in effect today.  *See* NRS 108.260.

A lis pendens confirms that a live dispute exists where "the title to [a] property is disputed." *LaSalle Bank N.A. v. Hammer Family 1994 Trust*, No. 59420, 2015 WL 1423421, at *1 (Nev. 2015) (unpublished disposition).  Thus, a lis pendens "cloud[s] title *before* a sale of property occurs *so that the claims of a party may be resolved* …." *Coury v. Tran*, 895 P.2d 650, 653 (Nev. 1995) (emphasis changed).   By placing the pending-litigation provision *after* NRS 106.240, the Legislature manifested its intent that the pending-litigation provision would act as an *exception* to NRS 106.240, *i.e.*, that serving a quiet-title complaint or recording a lis pendens in relation to a mortgage preserves the mortgage until either the matter is resolved or the ten-year period for doing so expires, whichever is later.  Holding otherwise could place the two provisions in conflict in situations like those here, as a lis pendens relating to a mortgage could not have any continuing "force or effect" if the underlying mortgage were terminated mid-litigation.

---

[21]  "The title of a statute may be considered in determining legislative intent."  *Coast Hotels & Casinos, Inc. v. Nevada State Labor Comm'n*, 34 P.3d 546, 551 (Nev. 2001).

124746647

"When two statutory provisions conflict," Nevada law compels courts to "harmonize conflicting provisions so that the act as a whole is given effect." *State v. Eighth Jud. Dist. Ct. (Logan D.)*, 306 P.3d 369, 380 (Nev. 2013) (citations omitted).  Read together, the full statute provides that mortgages ordinarily terminate ten years after the debt becomes "wholly due," except that notices of pending litigation regarding the mortgage forestall that outcome while they remain valid and effective, until ten years after their issuance.  Thus, the lis pendens filed here automatically tolled NRS 106.240's 10-year clock.

### 3. Equitable Considerations Require Tolling NRS 106.240's Ten-Year Period During Litigation Concerning the Lien's Validity.

In any event, because no one could reasonably have doubted Fannie Mae's intention to enforce the deed of trust once the prior quiet-title action concluded, given the positions Fannie Mae took during that litigation, the NRS 106.240 period was equitably tolled throughout that case.

NRS 106.240's application is not automatic and can be precluded by equitable considerations.  In *Pro-Max Corp. v. Feenstra*, 16 P.3d 1074 (Nev. 2001), the Nevada Supreme Court found that, while the ten-year period under NRS 106.240 had unquestionably passed, the statute did not automatically terminate the lien.  *See id*. at 1079.  Instead, the court remanded the case for further proceedings on whether an equitable consideration—there, estoppel—precluded that result.  *Id.*  Had equitable considerations been off limits, there would have been no basis for remand.  *Feenstra* is consistent with a long line of decisions holding that Nevada courts retain the power to fashion equitable remedies in cases involving real property.  *See*, *e.g.*, *Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1111 (Nev. 2016).  *Feenstra*, *Shadow Wood*, and cases like them confirm that equitable considerations can trump NRS 106.240's application.  The Court should find that they do so here.

Here, the equities clearly favor Nationstar/Fannie Mae, which diligently litigated its rights and successfully defeated a prolonged quiet-title challenge brought by Plaintiff.  Tolling the ten-year period is also equitable to the public at large, as it would advance the public interest in clear and reliable land records.  The land records relating to the Property contain the the First Notice of

11

124746647

Default, [Exhibit 6], the First Rescission, [Exhibit 7], the Second Notice of Default, [Exhibit 8], the Second Rescission, [Exhibit 9], the assignment of the Deed of Trust to BANA, [Exhibit 13], the assignment of the Deed of Trust to Nationstar, [Exhibit 2], the Trustee's Deed Upon Sale, [Exhibit 3], the Third Notice of Default, [Exhibit 10], and a Notice of Trustee's Sale, [Exhibit 11]. No one could plausibly infer from those records that the lien had been satisfied, abandoned, or forgotten.  Holding that the ten-year period under NRS 106.240 continues to run under these circumstances would introduce confusion and uncertainty, not clarity.

Indeed, adopting Plaintiff's position would undermine years of work by this Court, the Ninth Circuit, Nevada courts, and other federal courts in resolving the substantial volume of litigation regarding the effect of HOA foreclosures on Enterprise lien interests.  *E.g.*, *Berezovsky v. Moniz*, 869 F.3d 923 (9th Cir. 2017); *Daisy Tr. v. Wells Fargo Bank, N.A.*, 445 P.3d 846 (2019). Those decisions confirm that the Federal Foreclosure Bar preserves liens that Nevada HOA foreclosures could otherwise extinguish, and the clarity the decisions provide has streamlined and reduced burdensome litigation in Nevada courts.  Allowing NRS 106.240 to terminate the Deed of Trust here would usher in a wave of new litigation—a wave that already appears to be forming around ancient lien arguments—seeking to effectively re-litigate and erase those results.  The public interest favors resolving title disputes efficiently, not creating incentives for parties like Plaintiff to prolong them.

Finally, it is expected that Plaintiff will argue that equitable tolling is unavailable because NRS 106.240 is a statute of repose, but that argument is incorrect on the merits.  The Nevada Supreme Court's decision in *Feenstra* demonstrates that equitable considerations can preclude application of NRS 106.240 in appropriate circumstances.  *Feenstra* comports with other states' equitable exceptions to statutes of repose; federal courts recognize and apply such exceptions routinely.  *See, e.g.*, *McCullough v. World Wrestling Ent., Inc.*, 172 F. Supp. 3d 528, 551–55 (D. Conn. 2016) (tolling statute of repose under "continuing course of conduct" doctrine).

Accordingly, if the Court holds that NRS 106.240 applies here, it should fashion an equitable remedy to preclude application of the statute.

### C.     NRS 106.240's Ten-Year Clock Was Never Triggered.

Aside from the rescission and the equities, Plaintiff's claim fails for a more fundamental reason:  The ten-year clock was never triggered.

Plaintiff contends that Borrower's last payment was made on May 1, 2009, that the debt then secured by the Deed of Trust was accelerated on or before August 1, 2009 "or at the latest" on August 15, 2009, and that such acceleration would have necessarily rendered the Loan "wholly due" under NRS 106.240.  *See* Complaint at ¶¶ 72-75.  Plaintiff is incorrect as a matter of law.

While neither the Nevada Legislature nor the Nevada Supreme Court has defined "wholly due" as the term is used in NRS 106.240, the only plausible reading of "wholly due" is the maturity date stated in the relevant deed of trust, or a recorded written extension of that date.[22]

#### 1.     Under NRS 106.240, Only Two Kinds of Instruments Can Make a Loan "Wholly Due" and Trigger the Ten-Year Ancient-Lien Clock.

The express terms of NRS 106.240 make only two types of instruments relevant in determining when the obligation a lien secures becomes "wholly due" for purposes of triggering the statute's ten-year clock—(1) the recorded "deed of trust" itself, and (2) "any recorded extension thereof."  *Id.*

The Nevada Legislature is obviously aware of notices of default, given its comprehensive regulation of their form and content, and the process by which they are issued and recorded.  *See* NRS 107.080 (requiring a trustee to record a notice of default prior to initiating power of sale); NRS 107.087 (providing requirements for content, recording, and posting of notices of default). Had the Legislature intended notices of default, or related correspondence, to trigger NRS 106.240, it could have inserted a reference to such documents when enacting NRS 107.080 or 107.087, or even when amending 106.240.  It did not.

---

[22] Here, the definition of "Note" in the Deed of Trust states that "Borrower owes Lender [a certain sum] plus interest[,]" and "promised to pay this debt in regular Periodic Payments and *to pay the debt in full not later than August 01, 2034*," a date still far in the future as of this filing.  *See* Exhibit 1, at p. 2 (emphasis added).

124746647

"[T]he 'doctrine of expressio unius est exclusio alterius as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'" *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1054 (9th Cir. 2018) (citation omitted). "The maxim 'Expressio Unius Est Exclusio Alterius', the expression of one thing is the exclusion of another, has been repeatedly confirmed in [Nevada's jurisprudence]." *Galloway v. Truesdell*, 422 P.2d 237, 246 (Nev. 1967). NRS 106.240's references to "deeds of trust" and "recorded extensions" setting the date a loan becomes "wholly due" for purposes of triggering the ten-year clock thus precludes other documents, such as notices of default, from doing so.

### 2. NRS 106.240's Statutory History Confirms the Point.

Nationstar's reading comports with the statutory history of NRS 106.240.[23]  NRS 106.240 has changed little since it was enacted in 1917.  It was amended in 1965 to include additional documents (deeds of trust and recorded extensions) as potential triggers.  Had the Legislature intended to add notices of default or related correspondence to the list, it could easily have done so then or at some time thereafter.  Indeed, although the Legislature made sweeping changes to its foreclosure laws after the 2008 housing crisis—particularly regarding the type and form of notice required to be given to borrowers—NRS 106.240 remained untouched.  The statute has for more than a century omitted any mention of NRS 106.240.  This history refutes any contention that the Nevada Legislature intended for other documents, such as notices of default and related correspondence, to trigger NRS 106.240.

### 3. The Notice of Default Could Not Make the Debt "Wholly Due" Because the Deed of Trust Contained a Reinstatement Clause.

Even if the First Notice of Default could have accelerated the Loan, it still could not make the Loan "wholly due" within the meaning of NRS 106.240, because the Borrower retained the

---

[23] "Statutory history" refers to the evolution of a statutory scheme as evidenced by its actual, *enacted* provisions, in contrast to "legislative history" which refers to *unenacted* material like floor statements and committee reports. *See, e.g., Chhetri v. United States*, 823 F.3d 577, 587 n.13 (11th Cir. 2016) (differentiating statutory history from legislative history).

14

124746647

right to reinstate the Loan under the Deed of Trust by making a partial payment of the past-due amount.  *See* Ex. 1 at p. 12-13.

An obligation that becomes fully due cannot be satisfied or altered by partial, rather than complete, performance.  *See generally Effect of Performance as Discharge and of Non-Performance as Breach*, Restatement (Second) of Contracts § 235 (updated Oct. 2019).  Thus, for a loan to become "wholly due" as the term is commonly used, payment in full must be a borrower's only non-breaching option.  But here, even *after* the correspondence was allegedly sent and the First Notice of Default recorded, the Borrowers retained the "right to reinstate after acceleration" by making a *partial* payment.  *See id*.  As a practical matter, the only time that all amounts owed are certain and therefore "wholly due" is at maturity, not following an acceleration.  *See Annen v. Bank of Am.*, No. 1:16-cv-00641-SCJ-AJB, 2016 WL 11569314, at *4 (N.D. Ga. Nov. 25, 2016), *report and recommendation adopted*, 2016 WL 11569313 (N.D. Ga. Dec. 19, 2016).

## II.    The Court Should Dismiss SFR's First Claim for Relief for Violation of NRS 107.200 *et seq.* With Prejudice Because the Legislature Did Not Create a Private Cause of Action for Breach of NRS 107.260

SFR's first claim for relief alleges that SFR made requests pursuant to NRS 107.200 *et seq.*  Although SFR admits that Nationstar responded to SFR's requests and provided a pay-off statement.  However, based on the plain language of the statute, the legislature did not create a private cause of action for any failure to provide a requested Note.

Pursuant to NRS 107.200 and NRS 107.210, when an interested party requests certain payoff information from a deed of trust beneficiary, that beneficiary must provide the information within 21 days.  A summary of the information that must be provided is "the amount of unpaid debt secured by the [deed of trust], applicable interest rates, and total amount of principal and interest due which has not been paid." *Resources Group, LLC as Tr. for S. Decatur Tr. v. Omni Fam. LP*, 77892-COA, 2019 WL 6974771, at *2 (Nev. App. Dec. 18, 2019).  A different statute, NRS 107.260, states, "If a person . . .  includes in the request for [] a statement [pursuant to NRS 107.200 or 107.210] a request for a copy of the note or deed of trust, the beneficiary shall mail a copy of the note or deed of trust with the statement at no additional charge."

NRS 107.300 states that when a beneficiary "willfully fails to deliver a statement requested pursuant to NRS 107.200 or 107.210," it is liable to the requestor for $300 and any actual damages. However, neither NRS 107.300 nor any other statute states that a beneficiary is liable to the requestor for violation of NRS 107.260 for failing to provide a note along with the payoff statements outlined in NRS 107.200 and NRS 107.210.

In Nevada, when the legislature does not intend to create a private cause of action for a violation of a statute, the Court cannot create a private cause of action "no matter how desirable [such a cause of action] might be as a policy matter, or how compatible with the statute." *Neville v. Eighth Jud. Dist. Ct. in and for County of Clark*, 406 P.3d 499, 503 (Nev. 2017) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001)). Further, "the absence of an express provision providing for a private cause of action to enforce a statutory right strongly suggests that the Legislature did not intend to create a privately enforceable judicial remedy." *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 101 (Nev. 2008). That absence of an express provision is especially pertinent when the statute provides express remedies under other circumstances. *Richardson Const., Inc. v. Clark County Sch. Dist.*, 156 P.3d 21, 23 (Nev. 2007) ("When a statute provides an express remedy, courts should be cautious about reading additional remedies into the statute.").

Here, the legislature clearly did not intend to create a private cause of action for violation of NRS 107.260. While NRS 107.300 explicitly creates a private cause of action for a failure to provide a payoff statement pursuant to either NRS 107.200 or NRS 107.210, it makes no mention of NRS 107.260 or the failure to send the requested note. That omission cannot be anything other than intentional under the maxim Expressio Unius Est Exclusio Alterius outlined above. Thus, because the legislature did not create a private cause of action for violation of NRS 107.260, SFR cannot succeed on a claim for breach of NRS 107.200 *et seq.* that is exclusively based on a violation of NRS 107.260. The Court should dismiss the first claim for relief for those reasons. Moreover, because SFR could not bring a claim for violation of NRS 107.260 under any set of facts, the Court should dismiss the claim with prejudice.

124746647

**III.    Plaintiff's Claims Fail For Additional Reasons.**

    **A.    The Court Should Dismiss the Third Claim for Relief for Declaratory Relief and the Fourth Claim for Relief for Cancelation of Written Instrument With Prejudice.**

SFR also brings two claims under the theory that the Note and Deed of Trust were split at origination and were never reunited. It brings its third claim for relief seeking a declaration that because the Deed of Trust and Note were separated, Nationstar cannot foreclose and the Notice of Default and subsequently recorded Notice of Sale are invalid. SFR's fourth claim for relief seeks cancellation of the Third Notice of Default and the Notice of Sale for the same reasons. However, SFR already raised a similar argument in the earlier Quiet Title Action.  The Ninth Circuit rejected those arguments, finding that Fannie Mae's Deed of Trust survived the Quiet Title Action and that Nationstar served as beneficiary of record of the Deed of Trust as Fannie Mae's contractually authorized servicer.[24]  The claims are thus precluded under the doctrine of claim preclusion and should be dismissed.

    **1.    SFR's Claims are Precluded Under the Doctrine of Claim Preclusion.**

Under the doctrine of claim preclusion, "a valid final judgment [is] conclusive on the parties and ordinarily bars a later action based on claims that were or could have been asserted in the first action." *Boca Park Marketplace Syndications Grp., LLC v. Higco, Inc.*, 407 P.3d 761, 763 (Nev. 2017) (emphasis added). In this case, SFR and Fannie Mae have already engaged in litigation regarding quiet title and Fannie Mae's ability to enforce the Deed of Trust. That litigation was finally resolved on appeal as the Ninth Circuit Court of Appeals affirmed the summary judgment in Fannie Mae's favor. SFR already raised the argument that the Deed of Trust and Note were split, which SFR contended purportedly undermined any interest Fannie Mae held in the Property. The district court rejected SFR's argument, finding that Nationstar's appearance as beneficiary of record of the Deed of Trust owned by Fannie Mae did not undermine Fannie Mae's property

---

[24] *See*, Exhibit 5.

124746647

interest; the Ninth Circuit affirmed.[25]  SFR is, therefore, precluded from bringing claims that the Note and Deed of Trust were separated at origination and never reunited.

SFR is precluded from claiming Nationstar does not own the Note, so its third and fourth causes of action should be dismissed. Moreover, because the claims are precluded, the Court should dismiss the claims with prejudice.

> **2.**     **Fannie Mae Owns the Note and Deed of Trust and Nationstar Holds the Note and Serves as the Beneficiary of Record of the Deed of Trust as Fannie Mae's Contractually Authorized Servicer.**

Finally, SFR contests Nationstar's ability to foreclose on the Property because the Note and Deed of Trust were split at origination and never reunited.  As litigated and decided in the earlier Quiet Title Action, the evidence demonstrates that Fannie Mae owns the Note and Deed of Trust, while Nationstar holds the Note and serves as beneficiary of record of the Deed of Trust in its capacity as Fannie Mae's contractually authorized servicer. Under Nevada law, Nationstar is permitted to foreclose on the Property under such an arrangement.

In *In re Montierth*, 354 P.3d 648 (Nev. 2015), the Nevada Supreme Court addressed this precise fact pattern:  where the note owner is not the deed of trust's record beneficiary, but "there is either a principal agent relationship between [them], or the mortgage holder 'otherwise has authority to foreclose in the [note owner]'s behalf.'"  *Id.* at 651 (quoting Restatement § 5.4 cmts. c, e).  In those circumstances, any apparent split is bridged by the relationship between note owner and deed of trust beneficiary, and foreclosure *is* permitted.  *Id.*  The Nevada Supreme Court has also confirmed that *Montierth* limits its holding in *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 254 (Nev. 2012), and "indicate[s] that Nevada disfavors an expansion of the *Edelstein* no-splitting rule" regarding notes and deeds of trusts.  *See West Sunset 2050 Trust v. Nationstar Mortgage*, 420 P.3d 1032, 1036 n.4 (Nev. 2018).

As the Ninth Circuit has already confirmed in the Quiet Title Action, consistent with *Montierth* and Nevada law, the Enterprises had a contractual relationship with the record

---

[25] *See*, Exhibits 4 and 5.

124746647

beneficiaries of the deeds of trust (MERS or an Enterprise's servicer) at the time of the HOA Sale. Nevada law thus confirms that SFR's arguments regarding any split note and deed of trust have no bearing on Nationstar's ability to foreclose on the Property.

**B.    The Court Should Dismiss the Fifth Claim for Relief for Wrongful Foreclosure for the Reasons Outlined Above and Because the Claim is Premature.**

SFR also brings a claim for wrongful foreclosure alleging that because the Deed of Trust was extinguished by NRS 106.240 and because the Note and Deed of Trust were separated at origination and never reunited, the foreclosure of the Property would be wrongful "[t]o the extent Nationstar proceeds with a foreclosure."[26]

For the reasons outlined above, if Nationstar forecloses the foreclosure will not be wrongful because NRS 106.240 is inapplicable and SFR is precluded from asserting that the Note and Deed of Trust were separated on origination, and the Court should dismiss the claim for wrongful foreclosure on that basis. However, even if a foreclosure of the Property would be wrongful, Nationstar has not yet foreclosed on the Property, and the claim for wrongful foreclosure is not ripe.

A claim is only ripe for judicial review when "the degree to which the harm alleged by the party seeking review is sufficiently concrete, rather than remote or hypothetical, [and] yield[s] a justiciable controversy." *Herbst Gaming, Inc. v. Sec'y of State,* 141 P.3d 1224, 1230–31 (2006). Further, a claim for wrongful foreclosure arises only after the power of sale has been exercised and focuses on the authority of the foreclosing entity at the time of foreclosure. *See, Collins v. Union Fed. Sav. & Loan Ass'n,* 662 P.2d 610, 623 (Nev. 1983). Here, no such foreclosure has occurred. SFR, instead, brought the claim based on a hypothetical future foreclosure sale. Its claim is not ripe and must be dismissed.

\ \ \

\ \ \

\ \ \

---

[26] ECF No. 1-1, Ex. A, ¶ 111.

124746647

**C.   The Court Should Dismiss the Sixth Cause for Injunctive Relief for the Reasons Outlined Above and Because Injunctive Relief is a Remedy Not a Cause of Action.**

Finally, SFR brings a claim to permanently enjoin Nationstar from foreclosing on the Property on the basis of the facts outlined in the Complaint. However, for all of the reasons outlined above, SFR is not entitled to relief under its claims and is, therefore, not entitled to a preliminary injunction. Moreover, injunctive relief is a remedy, not a cause of action, *Ward v. City of Henderson*, 2021 WL 2043937, at \*5 (D. Nev. May 21, 2021), and the Court should dismiss the cause of action for that reason alone.

<u>**CONCLUSION**</u>

For all of the reasons outlined above, the Court should dismiss each of SFR's causes of action asserted in its complaint. Moreover, the Court should dismiss each cause of action with prejudice as SFR cannot set forth any facts that would entitle it to relief.

DATED this 16th day of March, 2022.

TROUTMAN PEPPER HAMILTON SANDERS LLP

By:   */s/ Aaron D. Lancaster*
Aaron D. Lancaster, Esq.
Nevada Bar Number 10115
8985 S. Eastern Ave., Ste. 200
Las Vegas, NV  89123 *(Nevada Office)*
600 Peachtree St. NE #3000
Atlanta, GA  30308 *(Corporate Office)*
*Attorney for Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper*

124746647

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of Troutman Pepper Hamilton Sanders LLC, and that on the 16th day of March, 2022, I caused to be served a true and correct copy of the foregoing **NATIONSTAR MORTGAGE LLC, DBA MR. COOPER'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**, in the following manner:

☒      **(UNITED STATES MAIL)** By depositing a copy of the above-referenced document for mailing in the United States Mail, first-class postage prepaid, at, Atlanta, GA, to the parties listed below at their last-known mailing addresses, on the date above written:

| | |
|---|---|
| Karen L. Hanks, Esq.<br>Chantel M. Schimming Esq.<br>HANKS LAW GROUP<br>7625 Dean Martin Drive, Suite 110<br>Las Vegas, NV 89139<br>Tel: (702) 758-8434<br>Email: karen@hankslg.com<br>Email: chantel@hankslg.com<br>*Attorneys for SFR Investments Pool 1, LLC* | |

*/s/ Christina Hill*
An employee of Troutman Pepper Hamilton Sanders LLC

21

124746647